IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LORRAINE JOHNSON, Individually       )
and as Administratrix of the ESTATE OF   )
TERRY JOHNSON,                       )
                    Plaintiff,        )
                                      )
        vs.                           )    Civil Action No. 09-207
                                      )    Judge Terrence F. McVerry/
STATE FARM LIFE INSURANCE            )    Chief U.S. Magistrate Judge Amy Reynolds Hay
COMPANY,                             )
                    Defendant.        )

REPORT AND RECOMMENDATION

I.      RECOMMENDATION

        Plaintiff, Lorraine Johnson ("Johnson"), individually and as the Administratrix of

the Estate of Terry Johnson, filed this diversity action bringing a myriad of claims against

defendant stemming from the purchase of a life insurance policy issued to plaintiff's late

husband, Terry Johnson.  Defendant, State Farm Life Insurance Co. ("State Farm"), has filed a

motion to dismiss under Fed. R. Civ. P. 12(b)(1) claiming that this Court is without subject

matter jurisdiction and that the Complaint should nevertheless be dismissed pursuant to Fed. R.

Civ. P. 12(b)(6) as Johnson has failed to state a claim [Dkt. 9].

        For the reasons that follow, it is respectfully recommended that the motion to

dismiss under Rule 12(b)(1) be denied; that the motion filed pursuant to Rule 12(b)(6) be granted

with respect to Johnson's claims for breach of fiduciary duty (Count II), fraud (Count III),

common law bad faith (Count IV), breach of Unfair Trade Practice and Consumer Protection

Law (Count VII), breach of duty of good faith and fair dealing (Count VIII), violations of the

Unfair Insurance Practices Act (Count IX), and violations of Pennsylvania's bad faith statute

(Count X).  It is further recommended that the 12(b)(6) motion be denied as to her claims for violating the Pennsylvania Viatical Settlements Act (Count I), conversion (Count V), and breach of contract (Count VI), except with respect to damages.  In that regard, the motion should be granted as to Johnson's claim for attorney fees under the Pennsylvania Viatical Settlements Act and claim for punitive damages for breach of contract.

II.    REPORT

    A.    Factual and Procedural Background

        According to the Complaint and the exhibits attached thereto, State Farm issued a $10,000.00 Whole Life policy ("the Policy") to Terry Johnson on October 11, 1989, in which Johnson was listed as the beneficiary.  Complaint, Exh. A; ¶ 26.  On February 19, 2007, the Policy was purchased by Robert Confer, an agent of State Farm, for $100.00.  Complaint ¶¶ 4, 17.  Five days later, on February 24, 2007, Mr. Johnson passed away while being housed in the Fayette County Prison, having turned himself in to the Pennsylvania State Police on February 22nd for violating a restraining order obtained against him by Johnson.  Complaint ¶¶ 8, 9, 12.  When Johnson called to make a claim against the Policy, she was informed that Mr. Confer had purchased the Policy -- information which Mr. Confer had apparently already conveyed to Johnson on February 23, 2007, when Johnson "happened to telephone Confer."  Complaint ¶¶ 22-3, 29.

        As evidenced by a letter attached to the Complaint from State Farm to Johnson's counsel dated April 27, 2007, Mr. Johnson went to Mr. Confer's office on February 10, 2007, to cancel the Policy indicating that he did not want Johnson to receive the proceeds.  Complaint,

Exh. A.  Although Mr. Confer talked Mr. Johnson into maintaining the Policy by suggesting that he change the beneficiary, Mr. Johnson apparently came back again on February 14, 2007, to reinstate Johnson as the beneficiary.  It was on February 19, 2007, when Mr. Johnson again visited Mr. Confer's office to cancel the Policy that Mr. Confer, who had apparently known Mr. Johnson for many years and was aware that he was using drugs, suggested that he buy the Policy because he did not want to see Mr. Johnson lose coverage.  Complaint, Exh. A; ¶¶ 30.  The letter also indicates that the total estimated proceeds of the Policy are $10,712.27, and that Mr. Confer would pay for Mr. Johnson's burial expenses in the amount of $7,618.00.[1]  Complaint, Exh. A.

Johnson nevertheless responded by demanding that the entire proceeds of the Policy be released to her without condition.  Complaint ¶ 33.  Although it appears undisputed that State Farm tendered the full proceeds of the Policy to Johnson along with interest, Johnson complains that it was conditioned on release of all claims against State Farm.[2]  Complaint ¶¶ 33, 34; Exhs. B, C.

Johnson filed the instant Complaint on February 18, 2009, bringing claims against State Farm for violations of the Pennsylvania Viatical Settlements Act ("PVSA"), 40 P.S. § 621.1, *et seq.* (Count I); breach of fiduciary duty (Count II); fraud (Count III); common law bad faith (Count IV); conversion (Count V); breach of contract (Count VI); breach of Unfair Trade Practice and Consumer Protection Law, 73 P.S. § 201, *et seq.* ("UTPCPL") (Count VII); breach of duty of good faith and fair dealing (Count VIII); violations of the Unfair Insurance Practices

---

[1]Although State Farm has represented in its brief that it paid for Mr. Johnson's funeral expenses, Johnson disputes that fact.  See Def. Brief, p. 2 n.2; Pl. Brief, p. 6.

[2]Although not entirely clear, it appears that Johnson has consequently refused to cash the check.

Act, 40 Pa. C.S.A. § 1171.5, *et seq*. ("UIPA") (Count IX); and violations of Pennsylvania's bad

faith statute, 42 Pa. C.S.A. § 8371 (Count X).  Johnson seeks compensatory damages, punitive

damages with interest, attorney fees and costs.

      B.    <u>Standard of Review</u>

      The United States Supreme Court has recently held that a complaint is properly

dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to

relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)

(rejecting the long-adhered to 12(b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46

(1957)).  In assessing the sufficiency of the complaint, the Court must accept as true all

allegations in the complaint and all reasonable factual inferences must be viewed in the light

most favorable to the plaintiff.  <u>Angelastro v. Prudential-Bache Securities, Inc.</u>, 764 F.2d 939,

944 (3d Cir. 1985).  The Court, however, need not accept inferences drawn by the plaintiff if they

are unsupported by the facts as set forth in the complaint.  See <u>California Public Employees'</u>

<u>Retirement System v. The Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004), <u>citing</u> <u>Morse v. Lower</u>

<u>Merion School District</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the Court accept legal

conclusions set forth as factual allegations.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. at 555,

<u>citing</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).  "Factual allegations must be enough to raise

a right to relief above the speculative level."  <u>Id</u>.  The question is not whether the plaintiff will

prevail in the end but, rather, is whether the plaintiff is entitled to offer evidence in support of his

or her claims.  See <u>Oatway v. American International Group, Inc.</u>, 325 F.3d 184, 187 (3d Cir.

2003).

      Similarly, where, as here, a 12(b)(1) motion presents a facial challenge to the

court's jurisdiction, or one which is based on the legal sufficiency of the claim as opposed to a jurisdictional fact, the allegations in the complaint are also to be accepted as true.  Under these circumstances, "dismissal is proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous . . . .'" Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408-09 (3d Cir. 1991), quoting Bell v. Hood, 327 U.S. 678, 682 (1946).  See Gould Electronics Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

     C.    <u>Discussion</u>

          1.    <u>Subject Matter Jurisdiction</u>

State Farm initially argues that the Complaint should be dismissed because the Court is without subject matter jurisdiction since, based on a reasonable reading of the Complaint, the amount in controversy does not exceed the jurisdictional minimum of $75,000.00.

Federal courts have diversity jurisdiction where there is complete diversity among the parties and the amount in controversy meets the jurisdictional minimum of $75,000.00, exclusive of interest and costs.  28 U.S.C. § 1332(a).  See Spectacor Management Group v. Brown, 131 F.3d 120, 122 (3d Cir. 1997).  Whether the claims as alleged satisfy the amount in controversy requirement is determined from the face of the complaint.  Id.  The standard by which that determination is made has been articulated by the Supreme Court as follows:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that ... the sum claimed by the plaintiff controls if the claim is apparently made in good faith.  It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938).  See Huber v.

Taylor, 532 F.3d 237, 243 (3d Cir. 2008).  Thus, "[a] Complaint will be deemed to satisfy the

required amount in controversy unless the defendant can show to a legal certainty that the

plaintiff cannot recover that amount."  Spectacor Management Group v. Brown, 131 F.3d at 122.

> Moreover, the Court of Appeals for the Third Circuit has held that
>
> the question whether a plaintiff's claims pass the "legal certainty"
> standard is a threshold matter that should involve the court in only
> minimal scrutiny of the plaintiff's claims.  The court should not
> consider in its jurisdictional inquiry the legal sufficiency of those
> claims or whether the legal theory advanced by the plaintiffs is
> probably unsound; rather, a court can dismiss the case only if there
> is a legal certainty that the plaintiff cannot recover more than
> [$75,000].

Suber v. Chrysler Corp., 104 F.3d 578, 583 (3d Cir. 1997)  Cf. Maio v. Aetna, Inc., 221 F.3d

472, 481 (3d Cir. 2000) ("[T]he threshold to withstand a Rule 12(b)(1) motion to dismiss is

lower than that required to survive a motion filed pursuant to Rule 12(b)(6)").

> Here, State Farm argues that based on a reasonable reading of the Complaint, it

appears to a legal certainty that Johnson cannot recover more than the $75,000.00 jurisdictional

amount since the compensatory damages demanded by Johnson are only for the $10,000.00

proceeds of the Policy which have already been tendered and that any punitive damages she may

be entitled to must be proportionate to those damages.  Using a 3:1 ratio as an example, State

Farm concludes that the amount in controversy falls well short of the requisite $75,000.00.

> The Court of Appeals for the Third Circuit, however, has found that claims for

punitive damages, if appropriately made, "'will generally satisfy the amount in controversy

requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim

is below the statutory minimum.'"  Huber v. Taylor, 532 F.3d 237, 244 (3d Cir. 2008), quoting

Golden ex rel. Golden v. Golden, 382 F.3d 348, 355 (3d Cir. 2004).  State Farm does not argue

that Johnson's claims for punitive damages have been brought in bad faith or are otherwise

inappropriate.[3]  Rather, State Farm bases its argument on its own estimate of what amount of

punitive damages would be appropriate.  Although State Farm correctly points out that punitive

damages must be in proportion to the general damages, it does not necessarily follow that

punitive damages should be limited to a 3:1 ratio, particularly given Johnson's allegations in the

Complaint that State Farms' conduct was outrageous and in bad faith.  See State Farm Mut.

Auto. Ins. Co. v. Campbell, 538 U.S. 408, 426 (2003) ("[C]ourts must ensure that the measure of

punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the

general damages recovered"); Willow Inn, Inc. v. Public Service Mut. Ins. Co., 399 F.3d 224,

230 (3d Cir. 2005).  Thus, while it may be that "subsequent revelations" reveal that Johnson is

unable to recover punitive damages or that she is otherwise unable to meet the statutory

minimum, the Court cannot say to a legal certainty at this juncture  that the value of her claims is

below $75,000.00.  See Huber v. Taylor, 532 F.3d at 244 (Finding it appropriate to dismiss a case

when "subsequent revelations" reveal that the required statutory amount was not, in fact, in

controversy at the commencement of the action").

      2.      Failure to State a Claim

      In the alternative, State Farm argues that the Complaint should be dismissed

---

[3]Although State Farm does argue that punitive damages are not recoverable for breach of contract, and generally denies that Johnson is otherwise entitled to recover any punitive damages, it does not contend, nor can it, that punitive damages are unavailable to Johnson on the other claims where they have been sought.  See Francis J. Bernhardt, III, P.C. v. Needleman, 705 A.2d 875, 879 (Pa. Super. 1997) (Finding punitive damages properly assessed on claim of conversion).

because Johnson has failed to state a claim with respect to any of her causes of action.

First, State Farm argues that Johnson's claim brought at Count I under the PVSA should be dismissed because the statute only applies to "viatical settlement providers."  Because Johnson has not alleged that either State Farm or Mr. Confer is a viatical settlement provider and, indeed, complains that Mr. Confer was not a licensed viatical provider, the PVSA does not apply and her claim must fail.  State Farm particularly relies on § 626.2 of the statute which expressly excludes from the definition of a viatical settlement provider "a natural person who enters into or effectuates no more than one agreement in a calendar year for the transfer of life insurance policies for any value less than the expected death benefit."  Although the suggestion seems to be that the transaction at issue is the only one of its kind that Mr. Confer entered into in 2007, State Farm stops short of actually making that representation or offering any evidence to support it. The Court is therefor unable to conclude that Mr. Confer falls within the exception or that the agreement he entered into with Mr. Johnson is outside the scope of the PVSA.

State Farm has also argued that even if the PVSA applies, Johnson's claim should be dismissed because she has not suffered any damages as a result of State Farm's actions since State Farm has tendered the full proceeds of the Policy as well as interest.  See 40 P.S. § 626.12(b) ("Any person damaged by the acts of a person in violation of this act may bring a civil action against the person committing the violation in a court of competent jurisdiction").

Although Johnson has not addressed State Farm's argument in this regard, the Court is constrained to find that she has alleged sufficient damages in the Complaint to withstand a motion to dismiss.  Notwithstanding Johnson's representation that she has "experienced the financial loss of the proceeds of the policy," she has also alleged that as a result of defendant's

actions with respect to the PVSA she has experienced "other losses, both financial and personal, including but not limited to emotional distress."  Complaint ¶¶ 40, 41.  Although not a model of clarity, Johnson has alleged that she has suffered damages in addition to the loss of the Policy proceeds and precludes a finding, at least at this juncture, that she has not suffered any damages under the PVSA.

State Farm also argues that Johnson is unable to recover attorney fees under the PVSA arguing that there is no clear authority in the statute authorizing such fees.  The Pennsylvania Supreme Court has recently reiterated that under Pennsylvania law, "a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception."  <u>Trizechahn Gateway LLC</u> <u>v. Titus</u>, 976 A.2d 474, 482-83 (Pa. 2009).   Johnson appears to concede that none of these situations are applicable here, arguing only that "the harsh remedies encompassed in this statute imply a right to recover attorney's fees."  Pl. Brief, p. 11.  Johnson, however, fails to cite to any authority to support her theory that the right to attorney fees may be implied from a statute and has not even attempted to argue why this new exception should be created.  Accordingly, the Court declines to do so and finds that she is precluded from recovering attorney fees under the PVSA.

With respect to Count II, State Farm argues that Johnson cannot as a matter of law assert a claim for breach of fiduciary duty under the facts alleged in the Complaint.  Specifically, State Farm argues that, under Pennsylvania law, a life insurance company has no fiduciary obligation to a beneficiary and only has a fiduciary duty to an insured when a third party has asserted a claim against him or her.

9

Indeed, the Court of Appeals for the third Circuit has found that "[a]s a general rule, a life insurance company has no fiduciary obligation to the beneficiary; their relationship is solely a matter of contract." Benefit Trust Life Ins. Co. v. Union Nat'l Bank, 776 F.2d 1174, 1177 (3d Cir. 1985). See Levin v. Transamerica Occidental Life Ins. Co., 2008 WL 3895897 at *5 (E.D. Pa. Aug. 21, 2008) ("[L]ife insurance companies generally have no fiduciary obligation to beneficiaries of life insurance policies as their relationship is solely a matter of contract").  It has also held that "[u]nder Pennsylvania law, a fiduciary duty higher than the duty of good faith and fair dealing does not arise out an insurance contract until an insurer asserts a stated right under the policy to handle all claims asserted against the insured." Keefe v. Prudential Prop. and Cas. Ins. Co., 203 F.3d 218, 227-28 (3d Cir. 2000), citing Gedeon v. State Farm Mut. Auto. Ins. Co., 410 Pa. 55, 60, 188 A.2d 320, 322 (1963), and Lee R. Russ & Thomas F. Segalia, 3 Couch on Insurance § 40.7 (3d ed.1995).  See Ross v. Metro. Life Ins. Co.  411 F. Supp. 2d 571, 583 W.D. Pa. 2006) ("Pennsylvania courts and federal courts interpreting Pennsylvania law have found that insurers assume fiduciary relationships with their insureds when an insurer asserts a stated right under a policy to handle all claims against its insured"); Connecticut Indem. Co. v. Markman, 1993 WL 304056 at *5 (E.D. Pa. Aug. 6, 1993) ("Under Pennsylvania law, an insurer assumes a fiduciary duty in limited circumstances . . . when it asserts a stated right under the policy to handle all claims against the insured . . .").

Because Johnson can, at best, only be categorized as a beneficiary of the Policy and no third party has asserted a claim against Mr. Johnson, it appears that no fiduciary duty is owed.  As such, Johnson has not stated a plausible claim for breach of fiduciary duty against State Farm and it is properly dismissed.

At Count III of the Complaint, Johnson has brought a claim for fraud which State

Farm argues is properly dismissed as Johnson has failed to plead any facts in support thereof.

Under Pennsylvania law, fraud will be found where the plaintiff has established:

(1) a representation;
(2) which is material to the transaction at hand;
(3) made falsely, with knowledge of its falsity or recklessness as to
whether it is true or false;
(4) with the intent of misleading another into relying on it;
(5) justifiable reliance on the misrepresentation; and
(6) the resulting injury was proximately caused by the reliance.

Youndt v. First Nat'l Bank of Port Allegany, 868 A.2d 539, 545 (Pa. Super. 2005).  Moreover,

under Federal Rule of Civil Procedure 9(b), which states: "[i]n all averments of fraud or mistake,

the circumstances constituting fraud or mistake shall be stated with particularity," claims of fraud

are subject to a heightened pleading standard.  McCracken v. Ford Motor Co., 588 F. Supp. 2d

635, 644 (E.D. Pa. 2008).  Although some courts have interpreted this rule as requiring the

plaintiff to "at a minimum, state the time, place and content of the false misrepresentation, the

fact misrepresented and what was obtained or given up as a consequence of the fraud,"

Tredennick v. Bone, 647 F. Supp. 2d 495, 500-01 (W.D. Pa. 2007), aff'd, 323 Fed. Appx. 103

(3d Cir. 2008); DuSesoi v. United Refining Co., 540 F. Supp. 1260, 1272 (W.D. Pa. 1982);

Youndt v. First Nat'l Bank of Port Allegany, 868 A.2d at 545, the Court of Appeals for the Third

Circuit has interpreted the rule more liberally finding that allegations of "date, place or time" are

not required to satisfy the rule and that "the requirement is satisfied as long as the defendants

have been placed on notice "of the precise misconduct with which they are charged."  Seville

Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).  See In re

Docteroff, 133 F.3d 210, 217 (3d Cir. 1997)("The purpose of the rule is to allow a defendant to

meaningfully respond to the complaint").  The Court of Appeals nevertheless does require that

the nature and subject of the alleged misrepresentation be adequately described and that "some

measure of substantiation" be included.  Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,

742 F.2d at 791.  See Hartman v. Canada Life Assur. Co., 1988 WL 120743 at 3 (E.D. Pa. Nov.

4, 1988) (Finding that under Seville, "[a]lthough date, time and place are not required, at least

who said what to whom is").

          Here, Johnson has not described the nature of the alleged misrepresentation in the

Complaint or provided any measure of substantiation to the claim whatsoever.  Rather, Johnson

merely concludes that a misrepresentation was made based on her assertion that Mr. Johnson was

in a vulnerable state of mind and the fact that he sold his $10,000.00 life insurance Policy to Mr.

Confer for only $100.00.  Johnson's conclusion however, is purely speculative and based on

nothing more than the assumption that Mr. Confer must have misrepresented some fact for Mr.

Johnson to have entered into the transaction.  This is precisely the type of allegation that Fed. R.

Civ. P. 9(b) was designed to thwart.  See In re Burlington Coat Factory Sec. Litigation,

114 F.3d 1410, 1418 (3d Cir. 1997) ("Rule 9(b)'s heightened pleading standard gives defendants

notice of the claims against them, provides an increased measure of protection for their

reputations, and reduces the number of frivolous suits brought solely to extract settlements");

Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d at 791 (The requirement that

claims of fraud be plead with particularity serves, in part, "to safeguard defendants against

spurious charges of immoral and fraudulent behavior").  See also In re Craftmatic Sec. Litig., 703

F. Supp. 1175, 1182 (E.D. Pa.), rev'd in part on other grounds, 890 F.2d 628 (3d Cir. 1989)

("[S]uspicion alone does not satisfy Rule 9(b)").  Johnson, therefore has failed to state a plausible

claim of fraud and Count III of the Complaint is properly dismissed as well.

State Farm also asks that Johnson's claim for bad faith brought at Count IV of the Complaint be dismissed because Pennsylvania does not recognize a common law tort action for bad faith in insurance cases.

Indeed, as pointed out by State Farm, the Supreme Court of Pennsylvania expressly declined to create a common law tort cause of action for bad faith finding that the legislature had already enacted a system of sanctions to punish insurance companies for any wrongdoing in the form of the Unfair Insurance Practices Act and that it was up to the legislature to determine if sanctions beyond that were required to deter less than scrupulous conduct by insurance companies.  D'Ambrosio v. Pennsylvania Nat. Mut. Cas. Ins. Co., 494 Pa. 501, 507, 431 A.2d 966, 970 (1981).  See Toy v. Metro. Life Ins. Co., 593 Pa. 20, 40, 928 A.2d 186, 198-99 (2007).  The Pennsylvania General Assembly responded by enacting Pennsylvania's bad faith statute,  42 Pa. C.S. § 8371, which now provides "the only tort remedy against insurers for bad faith available under Pennsylvania law."  Employers Mut. Cas. Co. v. Loos, 476 F. Supp. 2d 478, 489 n.8 (W.D. Pa. 2007).  See Id., citing D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 494 Pa. 501, 431 A.2d  966 (1981) ("Pennsylvania does not recognize a common law tort action for bad faith").  Johnson's "belief" that the law is unsettled in this regard, without any discussion much less citation to authority is, to say the least, unpersuasive and her claim for common law bad faith, to the extent it sounds in tort rather than contract, is properly dismissed.

Johnson has also brought a claim for conversion at Count V of the Complaint alleging that Mr. Confer procured the Policy from Mr. Johnson without valid consent or legal justification thereby depriving Mr. Johnson as well as Johnson of the proceeds.

As recently described by the Pennsylvania Superior Court:

> Conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification.  Conversion can result only from an act intended to affect chattel.  Specific intent is not required, however, but rather an intent to exercise dominion or control over the goods which is in fact inconsistent with the plaintiff's rights establishes the tort.  Money may be the subject of conversion.

Parker Oil Co. v. Mico Petro and Heating Oil, LLC, 979 A.2d 854, 860 (Pa. Super. 2009),

quoting Shonberger v. Oswell, 365 Pa. Super. 481, 484-85, 530 A.2d 112, 114 (1987)(citation omitted).

State Farm argues that this claim is properly dismissed because Mr. Johnson willingly sold the Policy to Mr. Confer for consideration and that Johnson has not been deprived of any property since the proceeds of the Policy have not only been fully tendered but are akin to owing a debt which cannot provide the basis for conversion.  State Farm also argues that the claim is barred under the "gist of the action" doctrine.

Johnson does not dispute that the conversion claim brought by her as an individual is properly dismissed because State Farm has tendered the proceeds of the Policy to her but argues only that she has stated a cause of action for conversion because the transaction between Mr. Confer and Mr. Johnson deprived Mr. Johnson of his rights in the Policy. Moreover, Johnson argues that, contrary to State Farm's categorization, Mr. Johnson did not *willingly* sell the Policy to Mr. Confer but was induced to do so by Mr. Confer who took advantage of Mr. Johnson's vulnerable state of mind.  See Complaint ¶¶ 86-88.

Under these circumstances, it appears that Johnson has alleged facts that arguably suggest that Mr. Johnson was deprived of his rights in the Policy without his consent and without

legal justification. While it is not entirely clear that conversion is the proper cause of action to

address Johnson's complaint in this regard or that she will ultimately be able to prove

conversion, it is not without plausibility given that the nature of the transaction and precisely

what transpired between Mr. Confer and Mr. Johnson is also unclear.  As such, at least at this

juncture, it appears that Johnson should be permitted to proceed with her claim for conversion as

the Administratrix of Mr. Johnson's estate.

        Nor does it appear that Johnson's conversion claim is precluded under the gist of

the action doctrine.

        "Generally, the gist-of-the-action doctrine precludes a party from raising tort

claims where the essence of the claim actually lies in a contract that governs the parties'

relationship."  Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 718 (Pa. Super. 2005).

"The critical conceptual distinction between a breach of contract claim and a tort claim is that the

former arises out of 'breaches of duties imposed by mutual consensus agreements between

particular individuals,' while the latter arises out of 'breaches of duties imposed by law as a

matter of social policy.'"  Strausser v. PRAMCO, III, 944 A.2d 761, 767 (Pa. Super. 2008),

quoting Reardon v. Allegheny College, 926 A.2d 477, 486-487 (Pa. Super. 2007).  See

Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103-04 (3d Cir. 2001).

Thus, although a tort claim revolving around the performance of a contract would be barred

under the gist of the action doctrine, it does not necessarily follow that one involving the

inducement to form a contract in the first instance is also barred.  Sullivan v. Chartwell Inv.

Partners, LP, 873 A.2d at 719, citing eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10,

19 (Pa. Super. 2002).  Indeed, the Pennsylvania Superior Court declined to apply the gist of the

action doctrine in <u>Sullivan</u>, because the plaintiff's claim did not relate to the defendant's failure to perform its obligations under the contracts but rather related to the defendant's fraudulent promises that induced the plaintiff to enter into the contracts in the first instance.  <u>Id.</u>

Here, although Johnson's claim is one for conversion and not fraudulent inducement as it was in <u>Sullivan</u>, it nevertheless requires inquiry into the circumstances that precipitated the transaction between Mr. Confer and Mr. Johnson and not whether Mr. Confer breached an obligation imposed upon him as a result of the transaction.  As such, State Farm's motion with respect to Johnson's conversion claim is properly denied.

State Farm also argus that Johnson has failed to state a claim for breach of contract at Count VI because it has tendered the proceeds of the Policy to her thereby precluding a finding that she has suffered any damages.

A plaintiff asserting a breach of contract claim under Pennsylvania law must establish three elements: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) resultant damages.  <u>Pennsy Supply, Inc. v. American Ash Recycling Corp.</u>, 895 A.2d 595, 600 (Pa. Super. 2006).  Generally, a breach of contract claim cannot be sustained where the proceeds of the policy have been paid since, if the plaintiff has received everything due under the policy, there are no damages.  <u>Amitia v. Nationwide Mut. Ins. Co.</u>, 2009 WL 111578 at *3 (M.D. Pa. Jan. 15, 2009).  <u>See</u> <u>Birth Center v. St. Paul Companies, Inc.</u>, 567 Pa. 386, 400, 787 A.2d 376, 385 (2001) ("The purposes of damages in contract actions is to return the parties to the position they would have been in but for the breach").  The Pennsylvania Supreme Court, however, has held that damages for emotional distress "may be recoverable on a contract where ... 'the breach is of a kind that serious emotional disturbance was a particularly likely result.'"

16

D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 494 Pa. at 509 n.5, 431 A.2d at 970 n.5,

quoting Restatement (Second) of Contracts § 367 (Tent. Draft No. 14 March 1, 1979).  See Birth

Center v. St. Paul Companies, Inc., 567 Pa. at 401, 787 A.2d at 385; Amitia v. Nationwide Mut.

Ins. Co., 2009 WL 111578 at *3.  See also Tannenbaum v. Unum Life Ins. Co., 2005 WL 645237

at * 2 (E.D. Pa. March 18, 2005), quoting Restatement (Second) of Contracts § 353 (1981) (A

plaintiff may recover damages for emotional distress for breach of contract where the breach

caused bodily harm or "the contract or breach 'is of such a kind that serious emotional

disturbance was a particularly likely result'").

   Although it is not at all clear from the Complaint that Johnson will be able to

establish a contract or breach that was particularly likely to result in serious emotional

disturbance she has nevertheless alleged that "[a]s a direct, proximate result of the Defendant's

breach of contract, the Plaintiffs have suffered other consequential damages, both financial and

personal, including emotional distress, humiliation and embarrassment."  Complaint ¶ 101.  As

such, dismissal of the claim at this point in the proceedings appears to be premature and State

Farm's motion in this regard should be denied.

   Citing to DiGregorio v. Keystone Health Plan East, 840 A.2d 361 (Pa. Super.

2003), State Farm nevertheless argues that Johnson's claim for punitive damages in her breach of

contract claim is properly dismissed because punitive damages are not recoverable in a contract

action as a matter of law.  In DiGregorio, noting that punishment is "inconsistent with traditional

contract theories," since in contract cases "damages are awarded to compensate an injured party

for the loss suffered due to the breach," the Pennsylvania Superior Court held that the plaintiffs

were not entitled to punitive damages under their breach of contract claim.  Id. at 370, quoting

Johnson v. Hyundai Motor America, 698 A.2d 631, 639 (Pa. Super. 1997).

Notably, Johnson offers no counter argument in this regard but simply states that "this action is not solely based upon breach of contract" and, consequently, her "punitive damage claim" should be permitted to stand.  Pl. Brief, p. 10.  In so stating, Johnson not only appears to concede that punitive damages are not available for breach of contract but also misconstrues the nature of punitive damages. A request for punitive damages is not an independent claim but only an element of damages which cannot be recovered absent an underlying cause of action. DiGregorio v. Keystone Health Plan East, 840 A.2d at 370, citing Kirkbride v. Lisbon Contractors, Inc., 521 Pa. 97, 101, 555 A.2d 800, 802 (1989).  The cause of action at issue, in which she has specifically requested punitive damages (Complaint ¶ 104), is for breach of contract.  Because she is not entitled to punitive damages for a cause of action sounding in contract, her claim is properly dismissed.

At Count VII of the Complaint, Johnson has brought a claim under the UTPCPL, which she concedes requires her to establish the elements of common law fraud.  See Toy v. Metro. Life Ins. Co., 593 Pa. 20, 46, 928 A.2d 186, 202 (2007).  See also Tran v. Metro. Life Ins. Co., 408 F.3d 130, 140 (3d Cir. 2005) ("[W]e must conclude that every plaintiff asserting a private cause of action under the UTPCPL must demonstrate his/her justifiable reliance on the misrepresentation or wrongful conduct").  Having previously concluded that Johnson's Complaint fails to state a claim for fraud, her claim under the UTPCPL is properly dismissed as well.

Johnson's claim for breach of duty of good faith and fair dealing brought at Count VIII deserves a similar fate.  Although Pennsylvania law recognizes a cause of action for breach

of the contractual duty of good faith and fair dealing in the insurance context, it is clear that "Pennsylvania law does not recognize a separate breach of contractual duty of good faith and fair dealing where said claim is subsumed by a separately pled breach of contract claim." Smith v. Lincoln Benefit Life Co., 2009 WL 789900 at *11-12 (W.D. Pa. March 23, 2009), citing LSI Title Agency, Inc. v. Evaluation Services, Inc., 951 A.2d 384, 391 (Pa. Super.), appeal denied, 599 Pa. 694, 960 A.2d 841(2008). See Oehlmann v. Metro. Life Ins. Co., 644 F. Supp. 2d 521, 534 (M.D. Pa. 2007) ("The duty of good faith and fair dealing is an implied covenant that arises in every contract, and thus, its breach is tantamount to a breach of contract"). See also Meyer v. Cuna Mut. Group, 2007 WL 2907276 at *15 (W.D. Pa. Sept. 28, 2007) (The implied covenant of good faith does not provide the basis for a separate claim from breach of contract since it does nothing more than imply certain obligations into the contract itself).

Here, Johnson's claims for breach of duty of good faith and fair dealing and breach of contract are both based on the same conduct, namely, Mr. Confer's allegedly unlawful purchase of the Policy for $100.00, and are redundant. Complaint ¶¶ 95-104, 108-115. Johnson's claim for breach of duty of good faith and fair dealing is therefore subsumed into her breach of contract claim and should be dismissed.

State Farm also argues that Count IX of the Complaint should be dismissed because Pennsylvania does not recognize a private right of action under the UIPA.

The law could not be clearer. The UIPA expressly provides that enforcement of its provisions is the responsibility of the Insurance Commissioner and does not confer a private right of action. 40 P.S. § 1171.1, et seq. Moreover, not only has the Pennsylvania Superior Court repeatedly held that no such private right of action exists but the Pennsylvania Supreme

Court expressly declined to create a "judicially created cause of action" under the UIPA. D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 494 Pa. at 507, 431 A.2d at 969-70.  See Cresswell v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 820 A.2d 172, 180 n.4 (Pa. Super. 2003); Fay v. Erie Ins. Group, 723 A.2d 712, 714 (Pa. Super. 1999); Kramer v. State Farm Fire and Cas. Ins. Co., 412 Pa. Super. 227, 231, 603 A.2d 192, 193 (1992); Gordon v. Pennsylvania Blue Shield, 378 Pa. Super. 256, 262, 548 A.2d 600, 603 (1988); Hardy v. Pennock Ins. Agency, Inc., 365 Pa. Super. 206, 219, 529 A.2d 471, 478 (1987).  See also Oehlmann v. Metro. Life Ins. Co., 644 F. Supp. 2d at 531; Great West Assur. Co. v. Levithan, 834 F. Supp. 858, 863 (E.D. Pa. 1993); Lombardo v. State Farm Mut. Auto. Ins. Co., 800 F. Supp. 208, 212 (E.D. Pa. 1992).

Although Johnson may "disagree" with State Farm's interpretation of the cases it has cited she has offered no interpretation of her own nor cited to any cases which would suggest that a private right of action exists under the UIPA.  Consequently, the claim is properly dismissed.

Finally, Johnson has brought a claim for bad faith pursuant to 42 Pa. C.S. § 8371 at Count X of the Complaint which State Farm argues is properly dismissed because the statute only gives rise to a cause of action relative to an insurer's *handling* of a claim.  See Toy v. Metro. Life Ins. Co., 928 A.2d at 200.  Because Johnson's claim is based upon Confer's alleged purchase of the Policy and not the manner in which her claim was handled, State Farm argues that it is properly dismissed.

Johnson does not dispute that claim Pennsylvania's bad faith statute only gives rise to a cause of action directed at an insurer's handing of a claim but takes issue with State Farm's assertion that her claim is based on Mr. Confer's alleged conversion of the Policy,

20

arguing that her claim, in fact, revolves around how her claim was handled "*prior* to Confer converting the assets." Pl. Brief, p. 6 (emphasis added). No claim had been made, however, before Confer allegedly converted the assets, thereby precluding a finding that her claim of bad faith revolves around how her claim was handled. Id. See Jung v. Nationwide Mut. Fire Ins. Co., 949 F. Supp. 353, 360 (E.D. Pa.1997) (Section 8371 "was passed by the Pennsylvania Legislature specifically to rectify the lack of a common-law remedy for bad faith conduct in denying an insured's claim").

Johnson also alludes to an argument that her bad faith claim is also premised on the fact that State Farm conditioned the tender of the Policy proceeds upon her releasing all claims against it. Indeed, Johnson has alleged in the Complaint that State Farm's actions in this regard "was the equivalent of and constituted an unfounded, frivolous refusal to pay the policy proceeds." Complaint ¶ 122. Johnson, however, cites no authority to support her theory and the Court has found none.

To the contrary, bad faith under § 8371, will be found where the insurer did not have a reasonable basis for denying benefits under the policy and the insurer knew of or recklessly disregarded its lack of reasonable basis for denying the claim. Oehlmann v. Metro. Life Ins. Co., 644 F. Supp. 2d at 528. See Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005). As evidenced by the copy of the check issued by State Farm that Johnson has attached to her Complaint, State Farm not only tendered the entire proceeds of the Policy but included interest. Complaint, Exh. C. Thus, benefits were not denied under the Policy or compromised in any way; rather, it appears that Johnson received everything to which she was entitled.

21

Moreover, it is unclear to the Court how conditioning the payment of the full proceeds on her release of any claims against State Farm constitutes bad faith where the value of the claim was established by the face of the Policy and was tendered in full.  See Oehlmann v. Metro. Life Ins. Co., 644 F. Supp. 2d at 533 (Finding no breach of contract where the payment of the proceeds was made noting that the purpose of the release was to insulate defendant from litigation and not to settle the value of the claim which was established by the face value of the policy).  As argued by State Farm, "[a]n insurance company need not submerge its interests to that of a beneficiary," and is entitled to insulate itself from potential litigation.  Id. at 532. Compare Hayes v. Harleysville Mut. Ins. Co., 841 A.2d 121, 127 (Pa. Super. 2003) (Finding bad faith where the insurance company misrepresented the value of the policy and failed to disclose documents showing the true value of the policy).  As such, Johnson is unable to establish bad faith and the claim is properly dismissed.

D.      Conclusion

For these reasons it is respectfully recommended that the motion to dismiss under Rule 12(b)(1) be denied; that the motion filed pursuant to Rule 12(b)(6) be granted with respect to Johnson's claims for breach of fiduciary duty (Count II), fraud (Count III), common law bad faith (Count IV), breach of Unfair Trade Practice and Consumer Protection Law (Count VII), breach of duty of good faith and fair dealing (Count VIII), violations of the Unfair Insurance Practices Act (Count IX), and violations of Pennsylvania's bad faith statute (Count X).  It is further recommended that the 12(b)(6) motion be denied as to her claims for violating the Pennsylvania Viatical Settlements Act (Count I), conversion (Count V), and breach of contract (Count VI), except with respect to damages.  In that regard, the motion should be granted as to

22

Johnson's claim for attorney fees under the Pennsylvania Viatical Settlements Act and claim for punitive damages for breach of contract.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.D.2 B, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to timely file objections may constitute a waiver of any appellate rights.  Any party opposing objections may file their response to the objections in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 14 January, 2010

cc:    All Counsel of Record via CM-ECF