IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LORRAINE JOHNSON, Individually )
and as Administratrix of the ESTATE OF )
TERRY JOHNSON, )
               Plaintiff, )
                       )
    vs. )   Civil Action No. 09-207
                       )   Judge Terrence F. McVerry
STATE FARM LIFE INSURANCE )
COMPANY, )
               Defendant. )

MEMORANDUM OPINION

McVerry, Judge

Plaintiff, Lorraine Johnson ("Johnson"), individually and as the Administratrix of the Estate of Terry Johnson, filed this diversity action against Defendant, State Farm Life Insurance Company ("State Farm"), following the purchase of a life insurance policy issued to Johnsons' late husband, Terry Johnson, prior to his death. Presently before the Court is a motion for summary judgment submitted on behalf of State Farm. For the reasons that follow, the motion will be granted.

I.    Factual and Procedural Background

It is undisputed that Terry Johnson purchased a $10,000.00 State Farm life insurance policy ("the Policy") through State Farm agent Robert Confer ("Confer"), in 1989 that listed Johnson as the beneficiary. [ECF No. 1, ¶ 26, Exh. A]. It is also undisputed that in early 2007, the Johnsons were having marital problems which resulted in Mr. Johnson removing Johnson as the named beneficiary of the Policy. [ECF Nos. 48-1, pp. 6, 7, 9; 48-2, p. 7; 48-3]. Sometime in mid-February of 2007, Mr. Johnson reinstated Johnson as the beneficiary but, after learning that Johnson had obtained a Protection From Abuse order ("PFA") against him, he informed Mr.

1

Confer that he wanted to cancel the Policy altogether. [ECF Nos. 48-1, pp. 7-8, 10-11; 48-2, pp. 9, 12, 17; 48-3]. Although his motivation is in dispute, it is clear that instead of cancelling the Policy, Mr. Confer purchased the Policy from Mr. Johnson on February 19, 2007, for $100.00 and he named himself as the beneficiary. [ECF Nos. 48-2, pp. 9, 10-12; 48-3].[1]

Five days later, on February 24, 2007, Mr. Johnson passed away while being housed in the Fayette County Prison, having turned himself in to the Pennsylvania State Police on February 22nd for having violated the PFA order. [ECF No. 1, ¶¶ 8, 9, 12]. Although Mr. Confer originally offered to pay $5000.00 toward Mr. Johnson's funeral expenses he subsequently disclaimed all interest in the Policy and State Farm tendered the proceeds to Johnson in full. [ECF Nos. 1, Exh. C; 48-1, pp. 11-12, 15; 48-2, pp. 12, 16; 48-3; 48-6, pp. 4-6; 48-7]. State Farm also paid for Mr. Johnson's funeral expenses. [ECF Nos. 48-6, pp. 3, 5; 48-8].

Johnson nevertheless filed a complaint on February 18, 2009, bringing claims against State Farm for violations of the Pennsylvania Viatical Settlements Act ("PVSA"), 40 P.S. § 621.1, *et seq.* (Count I); breach of fiduciary duty (Count II); fraud (Count III); common law bad faith (Count IV); conversion (Count V); breach of contract (Count VI); breach of Unfair Trade Practice and Consumer Protection Law, 73 P.S. § 201, *et seq.* ("UTPCPL") (Count VII); breach of duty of good faith and fair dealing (Count VIII); violations of the Unfair Insurance Practices Act, 40 Pa. C.S.A. § 1171.5, *et seq.* ("UIPA") (Count IX); and violations of Pennsylvania's bad faith statute, 42 Pa. C.S.A. § 8371 (Count X). Pursuant to a motion to dismiss filed by State

---

[1] Mr. Confer has attested to the fact that he attempted to talk Mr. Johnson out of cancelling the Policy because it was a valuable asset and would be tantamount to throwing away $10,000.00. [ECF No. 48-2, p. 9]. Mr. Confer also testified that he was trying to help Mr. Johnson by preserving the Policy in case Mr. Johnson and his wife reconciled and he would regret having thrown the Policy away. In that event, Mr. Confer allowed that Mr. Johnson would be able to purchase the Policy back from him for the same $100.00. [Id. at pp. 10-11]. Although Johnson dismisses Mr. Confer's testimony in this regard as self-serving and requiring a credibility determination, she has not pointed to any evidence that would cast doubt on Mr. Confer's testimony or demonstrate that his motives were improper.

2

Farm, all of Johnson's claims were dismissed except those for violation of the PVSA (Count I), conversion (Count V), and breach of contract (Count VI). State Farm filed a motion for summary judgment with respect to those claims on March 8, 2011, which is now ripe for review.

II.     Standard of Review

Summary judgment is warranted only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Public Service Electric & Gas Company, 364 F.3d 135, 140 (3d Cir. 2004). When the moving party has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). See McGreevy v. Stroup, 413 F.3d 359, 363-64 (3d Cir. 2005). In evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Matreale v. New Jersey Dept. of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007).

III.    Discussion

Although Defendant comes to the argument later in it's brief, the Court notes at the outset that while Johnson's complaint revolves around the actions of Mr. Confer, she has brought this action solely against State Farm. Under Pennsylvania law, however, an employer may only be

3

held vicariously liable for the acts of an employee with whom a "master-servant" relationship exists, and not for the acts of an independent contractor. I.H. ex rel. Litz v. County of Lehigh, 610 F.3d 797, 802 (3d Cir. 2010). Although any number of factors have been used by the courts to determine whether a master-servant relationship exists, the Pennsylvania Supreme Court has found that "control over the work to be completed and the manner in which it is to be performed are the primary factors in determining employee status." Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd., 563 Pa. 480, 490, 762 A.2d 328, 333 (2000).[2] The focus of the inquiry is the right to control the day-to-day work being performed. I.H. ex rel. Litz v. County of Lehigh, 610 F.3d at 802. See Clayton v. McCullough, 448 Pa. Super. 126, 132, 670 A.2d 710, 714 (1996). See also Drexel v. Union Prescription Ctrs., Inc., 582 F.2d 781, 785 (3d Cir.1978), quoting Green v. Independent Oil Co., 414 Pa. 477, 483-84, 201 A.2d 207, 210 (1964) (citations omitted) ("the basic inquiry is whether such person is subject to the alleged employer's control or right to control with respect to his physical conduct in the performance of the services for which he was engaged . . . . The hallmark of an employee-employer relationship is that the employer not only controls the result of the work but has the right to direct the manner in which the work shall be accomplished; the hallmark of an independent contractee-contractor relationship is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result"). The burden of proving the existence of a master-servant relationship falls on the party seeking to impose vicarious liability. I.H. ex rel. Litz v. County of

---

[2]Although not discussed by the parties in this case, other factors include "[c]ontrol of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one is engaged in a distinct occupation or business; which party supplied the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer; and also the right to terminate the employment at any time. Id., quoting Stepp v. Renn, 184 Pa. Super. 634, 637, 135 A.2d 794, 796 (1957).

4

Lehigh, 610 F.3d at 802.

Here, plaintiff has not met her burden as the record is devoid of any evidence from which a fact finder could conclude that State Farm has the right to exercise day-to-day control over Mr. Confer and the manner in which he conducts his business. Indeed, the only evidence to which Johnson points to support a finding of a master-servant relationship is a telephone call Mr. Confer made to State Farm's company service department "to see if there was anything immoral, illegal or unethical with [him] buying this policy from the owner/insured," [ECF Nos. 48-2, p. 11; 48-3, p. 2; 56, p. 29-32, 35], and a letter State Farm wrote to Johnson's counsel on April 27, 2007, in which the claim examiner confirmed that Mr. Confer had called the service department to see if buying the Policy was something he could do. [ECF No. 56, p. 40]. Although Johnson characterizes Mr. Confer's telephone call as one seeking "authorization" from State Farm to purchase the Policy and State Farm's response as "ratifying" Confer's actions, neither of those characterizations, even if warranted, demonstrate that State Farm had control over the manner in which Mr. Confer conducts insurance policy business.

To the contrary, the record reflects that Mr. Confer is, and was, a self-employed independent contractor and not an employee of State Farm. Not only has Mr. Confer attested to the fact that he is a self-employed insurance agent but the State Farm Agent's Agreement ("the Agreement") that he entered into with State Farm expressly, and repeatedly, describes Mr. Confer as an agent "operating as an independent contractor." [ECF No. 48-2, pp. 2-3, 15; 48-4, pp. 1, 3, 4]. The Agreement also states that State Farm "[does] not seek, and will not assert, control over [Confer's] daily activities" and that such control, including "the right to exercise independent judgment as to time, place, and manner of soliciting insurance, servicing policyholders, and otherwise carrying out the provisions of this Agreement," is enjoyed solely by

Mr. Confer. Although under the terms of the Agreement State Farm makes the technical knowledge and experience it has developed over the years available to its agents, and provides them with guidance regarding the operation and financial management of their businesses as well as manuals, forms, computer-related and electronic files, and certain equipment. Confer is responsible for any expenses for office furniture, signs, the salaries of his employees, telephones, advertising and any other expenses he incurs in performing his responsibilities as an agent. Moreover, Confer testified that he is responsible for paying his employees and that he receives commission checks from State Farm based on his sales. [ECF No. 48-2, p. 3].

Under these facts, which are not in dispute, it cannot be said that State Farm exercises control over how Mr. Confer sells and services policies of insurance or otherwise performs his day-to-day business. The mere fact that Mr. Confer took advantage of the technical knowledge that State Farm makes available to its agents by making one telephone call does not alter that conclusion. See Kahn v. American Heritage Life Ins. Co., 324 F. Supp. 2d 652, 657 (E.D. Pa. 2004) (finding that the plaintiff was an independent contractor and not an employee of the defendant where the controls exercised by the company were "the minimum that a corporation has to retain to maintain its product quality and consistent business practice" and did not interfere with the manner by which the plaintiff performed her services). Under these circumstances, the Court finds that Johnson is unable to establish that a master-servant relationship existed between State Farm and Mr. Confer. See I.H. ex rel. Litz v. County of Lehigh, 610 F.3d at 801 n. 4, quoting Cox v. Caeti, 444 Pa. 143, 147, 279 A.2d 756, 758 (1971) ("where the facts [underlying the alleged master-servant relationship] are not in dispute, the question of the relationship become one for determination by the court"). Thus, State Farm cannot be held vicariously liable for Mr. Confer's actions and it therefore is entitled to summary

judgment on Johnson's claim for conversion and the claim brought under the PVSA.

State Farm also argues that it is entitled to summary judgment on Johnson's breach of contract claim because it tendered the proceeds of the Policy to Johnson, thereby precluding a finding that she has suffered any damages, and that the record is devoid of any evidence that she suffered any emotional distress as a result of the alleged breach.

As this Court has previously set forth, a plaintiff asserting a breach of contract claim under Pennsylvania law must establish three elements: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) resultant damages. Pennsy Supply, Inc. v. American Ash Recycling Corp., 895 A.2d 595, 600 (Pa. Super. 2006). Although generally a breach of contract claim cannot be sustained where the proceeds of the policy have been paid since the plaintiff would not have suffered any damages, see Amitia v. Nationwide Mut. Ins. Co., 2009 WL 111578 at *3 (M.D. Pa. Jan. 15, 2009), the Pennsylvania Supreme Court has held that damages for emotional distress "may be recoverable on a contract where . . . 'the breach is of a kind that serious emotional disturbance was a particularly likely result.'" D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 494 Pa. 501, 509 n.5, 431 A.2d 966, 970 n.5, quoting Restatement (Second) of Contracts § 367 (Tent. Draft No. 14 March 1, 1979). See Birth Center v. St. Paul Companies, Inc., 567 Pa. 386, 401, 787 A.2d 376, 385; Amitia v. Nationwide Mut. Ins. Co., 2009 WL 111578 at *3. See also Tannenbaum v. Unum Life Ins. Co., 2005 WL 645237 at * 2 (E.D. Pa. March 18, 2005), quoting Restatement (Second) of Contracts § 353 (1981) (A plaintiff may recover damages for emotional distress for breach of contract where the breach caused bodily harm or "the contract or breach 'is of such a kind that serious emotional disturbance was a particularly likely result'").

Having alleged in the Complaint that "[a]s a direct, proximate result of the Defendant's

7

breach of contract, the Plaintiffs have suffered other consequential damages, both financial and personal, including emotional distress, humiliation and embarrassment," the Court allowed Johnson's breach of contract claim to go forward. See [ECF Nos. 1, ¶ 101; 28, 29]. However, now, at the summary judgment stage of the proceeding, it is incumbent upon Johnson to show that a breach occurred and that it resulted in bodily harm or was of a kind that serious emotional disturbance was a likely result. Rodgers v. Nationwide Mut. Ins. Co., 344 Pa. Super. 311, 319-20, 496 A.2d 811, 815 (1985). "The latter only applies in the event of outrageous conduct by the defendant." Hayfield v. Home Depot U.S.A., Inc., 168 F. Supp. 2d 436, 461 n.15 (E.D. Pa. 2001).

Because the Court finds that Johnson is unable to demonstrate that State Farm breached a duty in the first instance, it need not address whether Johnson is able to recover damages for emotional distress stemming from an alleged breach. Johnson argues that "State Farm breached the contract by converting the proceeds from Johnson when he was in his most vulnerable state." [ECF No. 54, p. 12]. State Farm, however, did not convert the proceeds of the Policy and the Court has already found that it cannot be held liable for Mr. Confer's actions even if Johnson could establish that the transaction at issue constituted a conversion. Moreover, State Farm performed its duties imposed under the Policy by tendering the proceeds to Johnson. Johnson therefore is unable to establish that State Farm breached the contract in the first instance. Absent a breach, there can be no damages resulting from a breach, including damages for any emotional distress that Johnson claims to have suffered. As such, State Farm is entitled to summary judgment on Johnson's breach of contract claim as well.

D. <u>Conclusion</u>

Under the above stated reasons, State Farm's Motion for Summary Judgment [ECF No. 46] is GRANTED. An appropriate Order follows.

<u>/s/ Terrence F. McVerry</u>
United States District Court Judge

Dated: July 27, 2010

cc: All Counsel of Record via CM-ECF