IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORRAINE JOHNSON, Individually and as Administratrix of the ESTATE OF TERRY JOHNSON,<br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>STATE FARM LIFE INSURANCE COMPANY,<br>　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　Civil Action No. 09-207<br>)　Judge Terrence F. McVerry<br>)<br>)<br>) |

MEMORANDUM AND ORDER

McVerry, J

Plaintiff, Lorraine Johnson ("Johnson"), individually and as the Administratrix of the Estate of Terry Johnson, filed this diversity action against Defendant, State Farm Life Insurance Company ("State Farm"), after a State Farm insurance agent, Robert Confer ("Confer"), purchased a life insurance policy ("the Policy") he had issued to Johnson's late husband, Terry Johnson, just prior to his death. Following discovery, State Farm filed a motion for summary judgment on the three claims that had survived State Farm's previously filed motion to dismiss, i.e., violating the Pennsylvania Viatical Settlement Act ("PVSA") (Count I), conversion (Count V), and breach of contract (Count VI). The Court heard oral argument on June 15, 2011, and on July 27, 2011, issued a Memorandum Opinion and Order, granting State Farm's motion in its entirely and dismissing the case. [ECF Nos. 62-64].[1] Plaintiff filed a Motion for Reconsideration of Grant of Summary Judgment on August 24, 2011, which is now ripe for review. For the reasons that follow, the motion will be denied.

---

[1] A detailed accounting of the factual background and procedural history of the case is set forth in the Memorandum Opinion filed on July 27, 2011 [ECF No. 62], and, thus, has not been recounted here.

1

"The purpose of a motion for reconsideration is 'to correct manifest errors of law or fact or to present newly discovered evidence.'" Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010), *quoting* Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir.1999).  As such, in order to prevail on a motion for reconsideration, the moving party must demonstrate: (1) that there has been an intervening change in controlling law; (2) that new evidence is available; or (3) that the need to correct clear error of law or prevent manifest injustice exists.  Id.  Here, Johnson asks the Court to reconsider its Order of June 27, 2011, in order to correct what she categorizes as errors of law, and, thus is pursuing the third ground for relief.

Johnson first argues that the Court erred by requiring her to show that a master-servant relationship exists between State Farm and Confer in order to hold State Farm vicariously liable for Confer's actions.  Johnson contends that establishing a master-servant relationship is not the only mechanism through which State Farm can be held liable and that liability can be established under the doctrine of ratification.

It should be noted at the outset that the issue presented to the Court in State Farm's motion for summary judgment was whether State Farm could be held vicariously liable for Confer's actions absent evidence establishing a master-servant relationship between State Farm and Confer.  [ECF No. 49].  In response to State Farm's argument, Johnson never suggested that she need not establish a master-servant relationship or that the "doctrine of ratification" applied.  [ECF No. 54, p. 7].  Although Johnson did note in one sentence of her brief that State Farm ratified Confer's actions, she neglected to argue why that was significant and cited no authority to support her theory.  Id.  Moreover, although Johnson argued at the oral argument that the doctrine of ratification serves to hold State Farm liable, the context of her argument was that

State Farm's alleged ratification of Confer's actions demonstrated its control over Confer for purposes of establishing a master-servant relationship.  See I.H. ex rel. Litz v. County of Lehigh, 610 F.3d 797, 802 (3d Cir. 2010) (finding that an employer may only be held vicariously liable for the acts of an employee with whom a master-servant relationship exists and that the focus of the inquiry is the employer's right to control the day-to-day work being performed by the employee).  Indeed, counsel for Johnson repeatedly argued that State Farm's alleged ratification of Confer's actions demonstrated the control it had over Confer.  See Transcript: p. 17 (asking for authority to buy the Policy "is evidence of control by State Farm"); p. 17 (whether granting Confer the authority to purchase the Policy evidences State Farm's "control of [Confer] for purposes of a master servant relationship" is one factor to consider); p. 19 (directing Confer to undo the transaction "is evidence of control by State Farm ..."); p. 20 (the disclaimer "is evidence that State Farm is actually controlling what [Confer] does" .... "[i]ts evidence that who actually has control over what [Confer is] doing is State Farm"); p. 21 ("the law ... as far as master servant relationship, if there is no ... genuine dispute of facts, then that's a question of law for you"); p. 22 ("what more significant fact could there be to evidence who truly had control than State Farm directing him to undo this"); p. 24 ("the lynchpin of State Farm's liability is the control they exerted ..."); p. 26 ("[f]rom start to finish, State Farm has control over the situation .... So the doctrine of ratification keeps State Farm in this suit").  Having found the record devoid of evidence that State Farm controlled the manner in which Confer conducts insurance policy business and that its ratification of Confer's actions did not alter that conclusion, the Court concluded that Johnson was unable to establish a master-servant relationship and granted State Farm's motion on Johnson's claim for conversion and the claim brought under the PVSA.  Thus, there was no error of law.

Now, in her motion for reconsideration, Johnson argues for the first time that ratification alone suffices to establish vicarious liability regardless of whether a master-servant relationship exists. The difficulty with Johnson's theory, however, is that "[t]o find ratification it is necessary that the act to be ratified [was] done from its inception on behalf of the principal." Brourman v. Reed, 38 Pa. D. & C.3d 390, 392 (Pa. Com. Pl. 1980), *citing* McRoberts v. Phelps, 391 Pa. 591, 605, 138 A.2d 439, 446 (1958). See Evans v. Ruth, 129 Pa. Super. 192, 195, 195 A. 163, 165 (1937), *quoting* Restatement, Agency, § 82, p. 197 ("[r]atification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him"); Restatement 3d, Agency § 4.03 ("[a] person may ratify an act if the actor acted or purported to act as an agent on the person's behalf"). See also Colarossi v. Faber, 359 Pa. Super. 259, 268, 518 A.2d 1224, 1229 (1986), *quoting* Scott v. Purcell, 264 Pa. Super. 354, 363, 399 A.2d 1088, 1093, *aff'd*, 490 Pa. 109, 415 A.2d 56 (1979) ("'[p]ersons ordinarily express dissent to acts done on their behalf which they have not authorized or of which they do not approve.' Restatement (Second) of Agency . . . ."). Johnson has not pointed to any evidence to support a finding that Confer was acting on behalf of State Farm. To the contrary, Johnson has taken the position that Confer took advantage of Mr. Johnson to convert the Policy proceeds for his own benefit having named himself as the beneficiary. The doctrine of ratification therefore does not serve to hold State Farm liable. Thus, even if the Court previously misconstrued the import of Johnson's argument regarding ratification, it would have reached the same result and no injustice has occurred.

Citing to a footnote in the Court's Memorandum Opinion, which not only appears in the Factual and Procedural Background section of the Court's opinion but by its very nature is dicta,

Johnson complains that the Court failed to view the facts in the light most favorable to her. Again, it is necessary to put Johnson's argument in context.  In reciting the factual background of the case, the Court noted that Mr. Johnson had come to Confer in order to cancel the Policy and stated that "[a]lthough his motivation is in dispute, it is clear that instead of cancelling the Policy, Mr. Confer purchased the Policy from Mr. Johnson on February 19, 2007, for $100.00 and he named himself as the beneficiary." [ECF No. 62, pp. 1-2].  The Court then dropped a footnote noting that Confer had testified at his deposition that he attempted to talk Mr. Johnson out of cancelling the Policy because it was a valuable asset; that he was concerned Mr. Johnson would regret cancelling it if he and his wife reconciled; and that by purchasing the Policy Mr. Johnson would be able to buy it back from him for the same $100.00.   The Court then noted that "[a]lthough Johnson dismisses Mr. Confer's testimony in this regard as self-serving and requiring a credibility determination, she has not pointed to any evidence that would cast doubt on Mr. Confer's testimony or demonstrate that his motives were improper." [ECF No. 62, p. 2 n.1].

      Johnson argues that the Court's observation in this regard is clearly erroneous as evidenced by the fact that Confer testified at his deposition that it was Mr. Johnson's idea to sell the Policy to Confer but in a letter issued by State Farm dated April 27, 2007, it stated that it was Confer's idea to purchase the Policy.  This evidence, however, does not speak to Confer's motives for purchasing the Policy which is the subject of the Court's remark.  More importantly, however, even if the Confer was "caught in a blatant contradiction" regarding whose idea it was for him to purchase the Policy, and even if that somehow rendered his stated reasons for purchasing the Policy suspect, those facts have no bearing on whether State Farm is liable for Confer's actions.  Indeed, having found that Johnson's claims for conversion and that brought

5

under the PVSA were properly dismissed because there was no master-servant relationship between State Farm and Confer, Confer's credibility and motives for purchasing the Policy were immaterial and played no part in the Court's decision.  See Roth v. Norfalco LLC, 651 F.3d 367, 373 (3d Cir. 2011), *quoting* Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) ("[m]aterial facts are those 'that could affect the outcome' of the proceeding").

     Johnson's argument that Confer's motives were improper as evidenced by the fact that Mr. Johnson suffered from mental illness and was addicted to drugs is equally unavailing.  As before, Confer's motive, whether improper or not, is immaterial to the question of whether State Farm can be held liable for Confer's actions.  Id.  Moreover, the fact that Mr. Johnson was mentally ill and had a problem with drugs does not by itself demonstrate that Confer took advantage of him or even that Mr. Johnson was incompetent or otherwise incapable of selling the Policy at the time.

     Johnson therefore has failed to demonstrate the need to correct a clear error of law or prevent a manifest injustice and reconsideration of the Court's ruling on State Farm's motion for summary judgment is unwarranted.  Accordingly,

     IT IS HEREBY ORDERED that Plaintiff's Motion for Reconsideration of Grant of Summary Judgment [ECF No. 65] is DENIED.

                                                               By the Court,

                                                              /s/ Terrence F. McVerry
                                                              United States District Court Judge

Dated: 31st,  October, 2011

cc:    All Counsel of Record via CM-ECF